# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 2, 1927.

LEWIS S. MILLER, ET AL.,

VS.

REV. ALBERT J. GREEN, ET AL.

*Edward M. Hammond* and *W. Ashbie Hawkins* for complainants.

*Warner T. McGuinn* and *George W. Evans* for defendants.

STANTON, J.—

This controversy arises out of the following facts: In February, 1921, the Reverend Albert J. Green was elected pastor of the First Colored Baptist Church of Baltimore, located on Caroline street, in the City of Baltimore, and at that time there were nine deacons functioning in the work of the church. These deacons had been elected under the pastorate of the Reverend Neal, who preceded the Reverend Albert J. Green. This situation continued until December, 1925, when four more deacons were elected to sereve as members of the Board of Deacons for this church.

At different intervals, and on occasions when the expenditure of money was being discussed, the majority of the Board of Deacons was not in accord with the plans of the pastor. Some expenditures were for money appropriated to pay the traveling expenses of the pastor to Baptist conventions, and some were for railroad fare and incidental expenses to Philadelphia, where the pastor was in attendance on meetings of the Board of Foreign Missions. The particular matter of criticism in these items being the custom of the pastor to charge full railroad fare notwithstanding the fact that the pastor traveled on clergyman's rate, which is one-half fare.

Other items of expenditure personally by the pastor were the money

for cementing the cellar of the home bought and occupied by him; a loan of $150 to the pastor, occasioned by the loss of his ready cash when the banking firm of Taylor & Jenkins failed.

The items of a general nature in the work of the church which occasioned differences in the board were the failure to approve the tithing system; the employment of two church missionaries; the card index system of membership, and failure to appropriate or direct payment of full amounts of moneys raised for missions. There are other matters of minor importance which it is needless to enumerate, because they can lend no aid in determining the issue in this case, except to give color to the claim of the plaintiffs, that the action of the pastor in bringing the matter of amoting the deacons for action of the church meeting on December 23rd, 1926, was due to the opposition of certain deacons to expending money for various purposes which the pastor proposed and advocated. This created a condition, according to the defendant Green, where the Board of Deacons made it impossible for him to work harmoniously with the board, and retarded the work of the church in adopting any modern and progressive methods which he might submit. It had been suggested that they all voluntarily ask to be honorably discharged from office, and submit themselves for the action of the church. This proposition was voted down. Conditions gradually got more tense. The hour for the morning service was changed from eleven o'clock to ten thirty. This did not meet the approval or convenience of some of the members, and at the business meeting of the church in November, 1926, a turbulent spirit was manifest, going to the point that one deacon shook his finger at the pastor, in taking him to task for bringing the matter before the church, when the question had not been submitted to the Deacon Board. The contention being that because the pastor had made the change in the hour for the morning service without the action of the Deacon Board, he should take the responsibility for restoring the hour of the morning service. It was the attitude of one or more of the deacons in this meeting that crystallized the purpose of the pastor to submit the question of amotion of the entire Deacon Board for action at the next business meeting of the

church, and asking authority to nominate men with whom he could satisfactorily work. When the notice was given for the next business meeting, which was held December 23rd, 1926, the pastor did not say anything about his intended plan concerning the deacons, either by public notice from the pulpit, or in the church bulletin, where a printed notice was given of the annual meeting for the election of officers. These officers were the heads of the auxiliaries, who were elected each year on the fourth Thursday night in December, and never before in the history of this church had an entire Deacon Board been elected at the annual meeting, nor at any other time. Deacons were elected on approval for one year at a church meeting, and then as permanent deacons, with an indefinite tenure of office. Neither did the pastor say anything to the individuals on the Deacon Board about his plan to bring this matter to the attention of the church meeting, and the complaint is made in this case that his failure to give notice, either publicly or personally, that some of the business to be considered at the regular monthly meeting would be the question of honorably discharging the entire Deacon Board, makes the action of the church illegal and void, and the removal of the deacons without effect.

The office here involved is that of deacon in a Baptist church, which office carries no emoluments or perquisites. The church has a charter, but no constitution or by-laws. The charter is silent on the office of deacon, either as to his election or removal. There is nothing in Hiscox Church Manual which refers particularly to the removal of deacons from office. The action at this church meeting is not removal from church membership, but merely removal from office bearing in the church, with a continuation of the privileges of church membership.

Does the case made by the allegations of the bill entitle the plaintiffs to the relief which they seek?

The question of notice to a rector, who had a contractual relation with the vestry of an Episcopal Church, was discussed in the Stubbs case in 96 Md. 279. It was there said that the notice given in that case was a reasonable notice to terminate the relations, and remove the rector from his office; but

that the vestry intended to consider the question of severing his relation as rector at a meeting of the vestry was not a matter concerning which the rector was entitled to notice.

So in this case the congregation or church meeting elected these deacons. They had no vested right to the office. The tenure was indefinite—which means at the will of the body by which they were elected—and, therefore, the same body which appointed them could remove them at any regularly called meeting, without notice that such action was to be considered at the meeting.

But more nearly in point is the case of Morris Street Baptist Church vs. Dart, 67 S. C., page 338. That case deals with the removal of a pastor of a colored Baptist church. On page 343 the Court says:

"The congregation being the sole legislative and judicial body of the Baptist church, those who connect themselves with it, voluntarily assume the risk of the propriety and justice of congregational action, just as those who become Presbyterians or Episcopalians subject themselves in church affairs to the authority of synods and councils. The only questions, then, we have power to consider, are did the congregation meet; and did it depose the defendant as pastor? If these questions are answered in the affirmative, then the defendant was properly enjoined from interfering with the church property. The action of the church is controlled by the vote of the majority of the congregation, and presumably as a church; it is quite obvious, a civil tribunal cannot regard the sentiment of the majority expressed in any other way."

While no rule was offered in evidence in this case, because there are no rules enacted to control this church, the custom was to declare the church meeting to be in order and ready for business when thirty members were present. More than this number were present at the meeting on December 23rd, 1926. The meeting was regularly called by notice from the pulpit and printed notice in the church bulletin. It also happened to be the regular monthly business meeting of the congregation, and the annual meeting for the election of officers. In this meeting all of the deacons were honorably discharged from office on motion regularly made and carried.

The plaintiffs contend, however, that to hold their dismissal valid is to sanction conviction without the right of trial. Quoting again from the Dart case, for that was the claim of the pastor in that case:

"As to this, it is only necessary to say that this was not a church trial, but simply a dismissal of a pastor; and even if it had been, a civil court has no power to require a church court to observe the usual incidents of trial, such as the formulation of charges and notice.

Neither will the civil courts enter into the consideration of church doctrine or church discipline, nor will they inquire into the regularity of the proceedings of the church judicatories having cognizance of such matters. To assume such jurisdiction would not only be an attempt by the civil courts to deal with matters of which they have no special knowledge, but it would be inconsistent with complete religious liberty, untrammeled by state authority * * * where, however, a church controversy necessarily involves rights growing out of the contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights, under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy, who have voluntarily submitted themselves to the authority of the church by connecting themselves with it * * * neither will the Court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, excepting so far as it may be necessary to do so in determining whether it was, in fact, the church that acted."

See also note 49, L. R. A., page 384.

There is nothing in the rules or laws governing this particular church or the denomination, nor is there any action of this church which makes the Board of Deacons a super-body to the congregation, so that the Board of Deacons can reserve to itself the exclusive power to determine what matters the church might be allowed to consider in its regular meetings. The evidence discloses that the Board of Deacons exercised this power during

the interim between the death of the former pastor, and the election of a successor. That action was the result of advice from the Reverend Doctor Mack, who testified that he expressly told the deacons it should be limited to the time while the church was without a pastor. But whether the power was limited or not, it would create an anomalous situation, after the church had elected a pastor, to contend that no business could be submitted to a church meeting, by the pastor, which first had not received favorable action by the Board of Deacons. To recognize or concede such power would constitute a super-government within the church organization, which, so far as a Baptist church is concerned, would be contrary to the spirit and polity of the denomination.

As has already been said, this church has no constitution or by-laws which control the affairs of the church. Nothing to designate what shall constitute a quorum, and nothing has been shown in the general rules or manual, to which reference has been made, and which was offered in evidence, that any particular method for election or removal of deacons is prescribed; or that any particular number of members shall be required to constitute a quorum. This is usually left to each church. No church has the same number of members; and different churches, for their own purposes, in the various sections of the country, dealing with local conditions, especially in the rural churches, may require some number less than a majority of the entire membership, or in some localities, for special reasons, it may require a specified number. A Court of Equity cannot grant relief for inexpediency in the action of the pastor, even if it be conceded that it would have been the better course to have given notice to the deacons, that the matter of electing a new board would be submitted to the meeting of December 23, 1926. The giving of notice is a matter which could have been required by the church meeting when the question was submitted. There were several members of the Deacon Board, as then constituted, in attendance upon the meeting, and thirty-five to forty-five members of the church, and no one attempted to postpone the matter or suspend action for a future meeting until notice could be given.

The office of deacon has no element of the usual characteristics of an office in the political sense, nor any contractual relation with the church. It has no emoluments, perquisites or value as property. A deacon is merely one to serve as an assistant to the pastor in examining prospective members, visiting the sick, assisting in the routine of the church service. But at no time and in no respect is to be superior to the pastor, as the head of the membership; either in his pastoral work or administrative functions.

It is not analogous to say the method for removal from church membership should control in removing a deacon. Removal from membership severs connection with the church, and deprives the member of the privileges of the sacraments and other church rites; while removing a deacon from office merely demotes from an exalted position in church membership to the original status a person assumes when first entering the church as a member.

There is little force to the contention advanced by the plaintiffs to account for the conditions now existing in the affairs of this congregation. Suppose the pastor did charge full rate for his railroad fare when he went to California and other places, the deacons knew of the clergyman rate, and they could either have refused to send him at all, or recommend the appropriation of only the clergyman rate; and if the church was appraised of the facts in the case, it could sustain the recommendation, or authorize what it willed to be done. The pastor can control only what the members will that he should control, and if neglect in attendance on church business meetings deprives any member from voicing his or her opposition to any announced plan or policy, there is no ground for complaint by the absent member, and he or she should accept what is done by those who do attend its meetings, whether for spiritual or temporal matters.

Finding the action complained of in this case to be exclusively within the control and jurisdiction of the Baptist congregation assembled in regular church meeting, and no requirement for previous notice, and further that the action in no manner involves any civil rights, the bill of complaint will be dismissed; the plaintiffs to pay the costs.